**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 08 CR 115** |
| | ) | |
| **MARK POLCHAN and** | ) | **Magistrate Judge Maria Valdez** |
| **SAMUEL VOLPENDESTO** | ) | |

**ORDER**

This matter comes before the Court on the request of the government to detain the

defendants pending their trial on charges of knowingly conspiring to maliciously damage, by

means of a pipe bomb, a building and personal property at 6508 East 16th Street, Berwyn, Illinois

in violation of 18 U.S.C. §§ 844(i), 844(n) and 924(c).  In this case, the government seeks to

detain the defendants, under Section 3142(f)(1) of the Bail Reform Act of 1984, on the grounds

that: (1) the defendants are a danger to the community; and (2) that the defendants pose a risk of

flight.

The rules governing a detention hearing and the detention decision are well-settled.

Evidence may be introduced by proffer since normal evidentiary rules do not apply.  *See* 18

U.S.C. § 3142(f); *U.S. v. Salerno*, 481 U.S. 739, 743 (1987).   At the detention hearing, the

Government relied on a number of exhibits.  Defense counsel objected to such evidence as

unreliable.  Given the limited applicability of the evidentiary rules to this proceeding, the Court

overrules the defense objections.  The Court has considered those exhibits and will allow them to

be moved into evidence.

Here, defendants concede that a rebuttable presumption arises that no condition(s) will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(e). The presumption shifts the burden of production to the defendants to come forward with some evidence that if released they will not flee or endanger the community. *United States v. Portes*, 786 F.2d 758, 764 (7th Cir.1985).   However, even if the defendants rebut it, the presumption remains in the case as an evidentiary finding against release, but the ultimate burden of persuasion rests on the government. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir.1986).

The government seeks detention of both defendants on the bases of risk of flight and danger to the community.  As to the defendants' alleged dangerousness, it must establish "by clear and convincing evidence that no condition or set of conditions will ensure the safety of the community." *Portes*, 786 F.2d at 764. When the government seeks detention based on the defendant's risk of flight, it must establish by a preponderance of the evidence that no conditions will reasonably assure his appearance in court. *Id.* at 765.


Defendants' Burden

The defendants' initial burden of production is to come forward with some credible evidence of something specific about his charged criminal conduct or about his individual circumstances that tends to show that "what is true in general is not true in the particular case." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir.1986).  In support of their burden, defendants relied upon the findings and recommendation of Pretrial Services.  No additional evidence was submitted.

2

In determining whether conditions of release will reasonably assure the appearance of the defendants and the safety of the community, the court considers:  (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger, if any, that release would pose. 18 U.S.C. § 3142(g).   The Court will address each factor in turn.

Nature and Circumstances of the Offense

The government alleges, and the Grand Jury has found probable cause to believe, that the defendants conspired to damage a business by means of a pipe bomb.  The Court reviewed Government Exhibits Bombing 1 and 2 which are photos depicting the business establishment that the government proffers suffered damages from a pipe bomb that is the subject of the charges in the current indictment. The photos depict blown out front windows and interior damage to furniture and damage to the interior structure of the building.  Further, Government Exhibit Audio 2 Clip #3 indicates that the bomb was placed outside the building, which could have resulted in serious bodily injury to persons in the vicinity.  Because this offense involves serious allegations of violence and a potential minimum term of imprisonment of 35 years, this factor weighs against bond.

 Weight of the Evidence

The government proceeded by proffer to establish the weight of the evidence against the defendants.  The defendants did not produce any evidence, or proffer any substantive evidence

3

on the nature of the offense, the weight of the evidence or the government's allegations of other criminal activity.

The government alleges that defendant Polchan was asked by the Chicago Outfit to bomb the building and that Polchan recruited defendant Volpendesto to construct the bomb. The government argues that the building (known as C&S Coin Operated Amusements which leased coin-operated vending and video machines) was in competition with the Outfit's gambling operations. The Outfit, as alleged by the government, is the one described in *United States v. Calabrese*, 436 F. Supp. 2d 925, 926 (N.D. Ill. 2006).

The government further proffered that a confidential witness described as CW4 had previously worked with or at the direction of Polchan on a number of residential and commercial burglaries. According to the government, CW4, as well as other cooperating individuals and independent investigation, identify Polchan as a ranking member of the Outlaws Motorcycle Club and a criminal associate of the Outfit. The government also proffered that CW4 told the government that s/he worked for Volpendesto and was aware that in December of 2002 Volpendesto received from Kyle Knight a package containing black powder and a long green fuse. Kyle Knight was identified on the audio tapes as a person with knowledge of the bombing and admitting to supplying the flash powder and fuse to Volpendesto.

The government offers two CD exhibits and six audio clip transcripts[1] in support of this factor. The exhibits consist of statements recorded by CW4 between CW4 and Kyle Knight and between CW4 and Volpendesto. The audio clips implicate both defendants in the pipe bombing.

---

[1] Government CD Exhibits were identified as Audio 1 and Audio 2. Government Transcript Exhibits were identified as follows: Audio 1; Audio 2 Clip #1; Audio 2 Clip #2; Audio 2 Clip #3; Audio 2 Clip #4; and Audio 2 Clip # 5.

Specifically, Audio 1 has Volpendesto on tape implicating himself in the bombing, noting that he constructed the pipe bomb with a long wick that went through both sides and identifying the physical location of the building listed in the indictment to CW4.  Volpendesto as acknowledged other bombs he had constructed on prior occasions with two wicks.

Volpendesto also implicates Polchan (identified as "Goldberg"[2] on the tape) as being present at the bombing.  Audio 1 has CW4 stating that "[Volependesto] had to light it because if Goldberg [Polchan] wouldn't want one that long because Goldberg [Polchan] can run . . . ." Volpendesto adopts the comment with "yeah" and throughout refers to the bombing as an event involving at least two people with his frequent use of the word "we."

The tape also describes how CW4 was told to tell "Goldberg" [Polchan] that law enforcement was looking for a van they believed was used in the bombing.  Polchan had a van. According to CW4,  Polchan asked CW4 if the police had the license plate number from the vehicle used in the bombing.  When told no, Polchan stated "that shows you how smart they are."  According to the proffer, CW4 said that Volpendesto stated that Polchan made money from the bombing.

The government argues that Polchan was involved with the Outfit through his association with the "Large Guy" aka "Large" aka "Fat Ass" whose boss was Johnny Apes [Montelone].  On the audiotapes both CW4 and Kyle Knight refer to "Goldberg's" association with this individual.

---

[2]  The evidence establishes, and Polchan concedes, that he owns M. Goldberg Jewelry ("Goldberg") located in Cicero.  Goldberg's is described by the government as a pawn shop. Defendant Polchan did not offer any evidence to rebut the description of Polchan as "Goldberg" in the audio transcripts other than to argue that Polchan's name is not heard on the tape.

5

The government also contends that Polchan sent CW4 "hush money" from July of 2007 through June 2008 while he was incarcerated.

Based on the government's proffer and audio evidence, the evidence against Volpendesto is strong. The evidence against Polchan is derived from the implicit acknowledgment of Volpendesto that Polchan was the other person present at the bombing and by the statements of CW4 and Kyle Knight. The government has proffered enough evidence, which was substantially unrebutted at the hearing, that Polchan's association with the Outfit exists. Overall, the statements implicating Polchan are substantial evidence of Polchan's involvement. This factor weighs in favor of detention.

History and Characteristics of Defendant Polchan

This factor presents a mixed picture for Polchan. Considerations in defendant's favor include the length of his residence in the Chicago area, his long marriage, stable home life and extended family support. Polchan has been self-employed for the past 15 years with Goldberg Jewelry and works part-time at a nightclub, although the Court notes that Pretrial Services stated a discrepancy existed between the information provided from Polchan and family regarding the length of his employment and inconsistent title information on the ownership of Goldberg Jewelry. Also, Polchan tested negative for drugs and does not have a FOID card.

 On the other hand, Polchan's criminal record consists of 14 arrests from 1984 to 1996 with two convictions. During the course of this criminal record, Polchan had new arrest while on bond, supervision and probation. Defense counsel points out that Polchen did have a criminal history but that he has not been arrested since 1996. The government argues that Polchan's lack

of record in recent years does not establish a true picture of the man.  The government points to

Polchan's association with the Outfit, proffered by the government based on CW4 statements

and independent surveillance, which includes allegations of a variety of crimes ranging from

theft, robbery, gambling, making of usurious loans, interference with interstate commerce

through threats of violence including patterns of racketeering.  Polchan has not been charged

with these activities, but the Court does note that given the weight of the evidence in this case,

Polchan's lack of recent criminal record does not show the complete picture of the man.  Finally,

the government also points out Polchan's acknowledged membership in the Outlaws Motorcycle

Club ("Outlaws").[3]  Based on information from confidential informants and documents seized

pursuant to search warrants executed in this case, Polchan was the Treasurer of the local branch

of the Outlaws.  As its name implies, and as indicated by the tattoos on Polchan's arms, the

Outlaws are not a sewing circle.  It isa motorcycle club that gives off the appearance that its

members are rebellious.[4]

Lastly, the government relies upon statements from Polchan made to an undercover agent

acknowledging that he "was being watched" by law enforcement and that he thought he would

be in jail very soon because people he had grown up with "ratted him out."  Specifically,

Polchan said that he could do "15 to 20 years."

---

[3]  The general criminal history of the Outlaw's Motorcycle Club is noted in the case of *Piscottano v. Murphy*, 511 F.3d 247, 253-55, 274-76 (5th Cir. 2007).

[4]  According to Government Exhibits E-1 through 3, various tattoos and patches found on Polchan include the motto "God Forgives Outlaws Don't," a metal hand in a gesture commonly known as "flipping the bird," and a statement of "Outlaws 1%er."  The last of which, the government proffers, indicates that the Outlaws are part of the 1% of the motorcycle clubs in the country that engage in criminal activity.

On balance, weighing Polchan's history, characteristics and government proffer of other activity, this factor leans in favor of detention.

History and Characteristics of Defendant Volpendesto

Volpendesto has a few arrests in his criminal history. He has never been convicted. He is a man of advanced age and is affected by a variety of medical conditions, including suffering from depression. He has been married since 1974 and has lived in the same home for 23 years. He is a war veteran (1942-1945) and the possessor of a number of military honors. He has been unemployed the past eight years and noted that his prior occupation was as a sculptor and artist. Both he and his wife possess weapons and both have valid FOID cards. Overall, this factor weighs in favor of Volpendesto's release.

Nature and Seriousness of the Danger to any Person or the Community

Under this factor, the Bail Reform Act requires that this Court consider the evidence "in terms of the likelihood that [the defendant] . . . will pose a danger." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). The determination of dangerousness is not based on evidence that the defendant has been a danger in the past, but, on whether his conduct suggests the likelihood of future dangerous conduct. The presumption of dangerousness in § 3142(e) represents congressional findings that certain offenders, as a group, are likely to continue to engage in criminal conduct undeterred. To rebut this presumption the defendants do not have to prove their innocence. But, they must produce some evidence to show that the specific nature of the crimes charged, or that something about their individual circumstances, suggests that "what

8

is true in general is not true in the particular case . . . ." *United States v. Dominguez*, 783 F.2d

702, 707 (7th Cir.1986).

*Defendant Polchan*

In attempting to rebut the presumption of dangerousness, defendant Polchan focused on

his social characteristics (lack of recent criminal history and stable home life) as identified in the

Pretrial Services Report.  Although acknowledging his membership in the Outlaws, Polchan

denies (through counsel) any illegal purpose to his membership.

On the other hand, the government points to Polchan's association with the Outfit and the

Outlaws, which this Court has already discussed above.  In addition, the government points out

that in executing a search warrant on Polchan's business, a switchblade, knife, illegal stun gun,

and a machete were found.  Various law enforcement badges (found in the safe) and a

bulletproof vest were also found.   While defense counsel argued that the badges could have been

there to be re-metaled, no evidence of that was offered.   The implication is that badges were

stored away for use later in an attempt to impersonate a law enforcement officer.  Also, at the

Outlaws Clubhouse a live illegal hand grenade was found.  Defense counsel points out that

Polchan is not the only one with access to the Clubhouse.

Polchan has offered property, money and third-party custodian with home confinement

conditions as a reason security for his release.   While the property and cash bond offered is

substantial, there are no custodians available to be with him at all times.   Nonetheless, balancing

Polchan's positive characteristics against the government's proffer of Outlaw activities, ties to

9

the Outfit, and weapons and badges found at Polchan's business, this Court finds that this factor weighs in favor of detention.

*Defendant Volpendesto*

Although Volpendesto lacks a criminal conviction history, the government points to a history of arrests for violent offenses. *See* Gov't Mem. Opp. Bond, at 18-19. In 1990 he was charged with a federal offense involving allegations of ordering the beating of a man who may have talked to law enforcement about alleged illegal prostitution taking place at Volpendesto's "2105 Club." The magistrate judge detained Volpendesto as a danger to the community. The charges were subsequently dismissed. Volpendesto is also heard on the audio tape evidence submitted in this case crowing about his involvement in the bombing and bragging about other bombs he had put together. Finally, this Court noticed that at the detention hearing Volpendesto laughed inappropriately during the hearing and appeared not to take the proceedings seriously.

Like Polchan, Volpendesto offers up for bond his home with substantial equity and his wife as a third-party custodian and home incarceration. The government points out the inappropriateness of his wife as custodian given her uses of alias (Gov't Exhibit H) and proffered her checkered past running houses of ill-repute. Overall, this factor weighs in favor of detention.

<u>CONCLUSION</u>

This Court has given serious consideration to the defendants' positive personal attributes and offers of restrictive bond conditions. However, this Court is not persuaded that they

overcome the strength of the factors pointing to defendants' dangerousness and the balance of the factors pointing to detention.   Polchan's recent lack of criminal history and Volpendesto's lack of criminal convictions and their significant ties to the local community do not outweigh the extremely serious nature of the offenses with which they are charged, including the weight of the evidence against them and the nature and gravity of the danger that would be posed by their release.  The Court also notes that the potential minimum sentence of 35 years also weighs as a factor in favor of detention.

This Court finds that defendants have not sufficiently rebutted the presumption that no condition or combination of conditions will reasonably assure the safety of the community or the risk of flight.  Further, based upon its review of the record and all arguments submitted, and after

considering all of the § 3142(g) factors as well as the presumption in favor of detention. The Court finds that none of the conditions offered by the defendants could reasonably assure against risk of flight or danger to the community. The government has carried its burden of proving that pretrial detention is warranted in this case.

The Court further orders that Mark Polchan and Samuel Volpendesto shall be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. In custody, they shall be afforded reasonable opportunity for private consultation with counsel. I further direct that, upon order of a court of the United States or request of an attorney for the Government, the person in charge of the corrections facility in which Mark Polchan or Samuel Volpendesto is confined shall deliver him to a United States Marshal for the purpose of appearing in connection with court proceedings.

**SO ORDERED.**                                    **ENTERED:**

            **August 8, 2008**
**Dated: _____**

                                                   _____
                                                   **HON. MARIA VALDEZ**
                                                   **United States Magistrate Judge**.

12