UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.  08 CR 115 |
| v. | ) | |
| | ) | Judge Ronald A. Guzman |
| MARK POLCHAN and | ) | |
| SAMUEL VOLPENDESTO | ) | |

## DEFENDANT SAMUEL VOLPENDESTO'S
## RESPONSE TO GOVERNMENT'S MOTION TO DISQUALIFY COUNSEL

NOW COMES **SAMUEL VOLPENDESTO**, by his attorney, EDMUND P. WANDERLING, and pursuant to the Sixth Amendment of the United States Constitution, respectfully responds to the Government's Motion to Disqualify Counsel as follows:

## BACKGROUND

Samuel Volpendesto was arrested on July 30, 2008, relative to an Indictment which was filed February 7, 2008.[1]  The government seeks to disqualify Mr. Volpendesto's counsel of choice, Edmund P. Wanderling, alleging a conflict of interest.[2]  The government alleges that both attorneys Wanderling and Salerno represented a confidential witness that the government expects to call as a witness at trial. The government further indicates that this confidential witness will not waive any conflict due to this prior representation.

The government also asserts that both attorney Wanderling and Salerno have maintained legal and/or business relationships with alleged Outfit Member A.  The government avers that

---

[1] The Indictment in this cause was filed under seal.  Mr. Volpendesto was arrested after the Indictment was unsealed.

[2] The Government is also seeking to disqualify co-defendants counsel, Alexander M. Salerno.

both attorneys Wanderling and Salerno are not in a position to give advise to their clients, including the decision to cooperate against alleged Outfit Member A because of this relationship.

The government further alleges that Attorney Wanderling was identified as an attorney for alleged Outfit Member A in January 2004 when FBI Agents served him with a Title III inventory. Further, the government alleges Attorney Wanderling maintains a business relationship with "other parties of interest" including alleged Outfit Member A. The government alleges the following:

(a)     that Wanderling was the registered agent for at least three (3) business for which alleged Outfit Member A was named as an officer;

(b)     that Wanderling was the registered agent for co-defendant Polchan's business, Goldberg Jewelers.[3]

(c)     that Wanderling currently represents Nicholas J. Ferriola;

(d)     that Wanderling was the registered agent for the Show Room Lounge.[4]

(e)     that on November 19, 2003, Wanderling appeared at 5533 W. 25th Street, Cicero, Illinois, and identified himself to FBI Agents as an attorney for M&M Amusements.

(f)     that Wanderling and Salerno share office space.[5]

---

[3] Attorney Wanderling was the registered agent for M. Goldberg Jewelry and Repairs, Inc., which was formed August 8, 1996 and dissolved in 1998.

[4] Attorney Wanderling was the registered agent for JMAV Corporation which was formed February 15, 2000 and dissolved in 2003. At some point JMAV Corporation adopted the assumed name of Show Room Lounge.

[5] This fact is true; however, Wanderling and Salerno maintain entirely separate law practices.

## PRIOR REPRESENTATION OF C/W4

The government incorrectly states that Attorney Wanderling represented C/W4.  At no time to the best of Attorney Wanderling's recollection did he ever represent C/W4.  When Attorney Wanderling received the government's motion he contacted AUSA Funk relative to this allegation and was advised that AUSA Funk believed said representation involved a robbery in Wisconsin.  When Attorney Wanderling advised the government that such representation never happened, AUSA Funk advised Attorney Wanderling that AUSA Bhachu was actually handling this issue.  Thereafter, Attorney Wanderling contacted AUSA Bhachu who advised Wanderling that it was a case in the Circuit Court of Cook County.  This is also untrue.  Attorney Wanderling represented C/W4's son in a case involving the purchase of stolen property.  C/W4 was charged in the same case with unlawful possession of a weapon by a convicted felon.  C/W4 was represented by Alexander Salerno.  Attorney Wanderling at most stepped up for Attorney Salerno on occasion to get continuances at status dates, but never represented nor advised C/W4.[6]

As such, Attorney Wanderling owes no duty whatsoever to C/W4, has had no confidential attorney-client communications with C/W4 and has no conflict whatsoever regarding this witness.

## ATTORNEY WANDERLING'S ALLEGED LEGAL/BUSINESS RELATIONSHIPS WITH ALLEGED OUTFIT MEMBER A AND OTHERS

The government's Motion in the "background" section at paragraphs 19-25 alleges that Attorney Wanderling has a business relationship with parties of interest.  This statement is a total mis-characterization.  Any business relationship was as an attorney or as a registered agent for a corporation.  Attorney Wanderling readily admits he has represented alleged Outfit Member A in real

---

[6] The only discussion Attorney Wanderling recalls with C/W4 were the existence of surveillance videos and the fact that C/W4 wanted a Michael Jordan rookie card back from the Chicago Police Department which had been confiscated with other property during the arrest of his son.

estate matters and has acted as a registered agent for corporations.  These corporations have not been alleged to have violated any law.[7]  However, to fully apprise the Court, the government fails to mention that Attorney Wanderling represented alleged Outfit Member A in a criminal case in the North District of Illinois in 1993.[8]  This individual presently has his own counsel and is willing to waive any conflict relating to Attorney Wanderling's representation in this cause.

As to other parties, again to fully inform the Court, Attorney Wanderling represented co-defendant Mark Polchan over 10 years ago in criminal matters in the Circuit Court of Cook County.  It is our understanding Mr. Polchan has no objection to Attorney Wanderling representing Mr. Volpendesto and would waive any conflicts.  Attorney Wanderling's representation of Nicholas Ferriola, Joseph Venzia or M&M Amusements is totally irrelevant as they are not charged in this case nor are they witnesses.`[9]  Further, of the corporations referenced in the government's motion,  Attorney Wanderling acted as Registered Agent for these entities and many are dissolved and such is not a "business relationship" as the government contends.

Pursuant to the Illinois Business Corporation Act, 805 ILCS 5/5.05 each domestic corporation having authority to transact business in the State of Illinois shall have and continually maintain in this State a registered agent.  Pursuant to 805 ILCS 5/5.25, service of process may be served on the registered agent for a corporation.  In many instances, an attorney or accountant

---

[7] To best of Attorney Wanderling's knowledge, these corporations are dormant and do little if any business.  Further, this unrelated representation creates no conflict.

[8] Because this parties named has not been released,  the case number will not be disclosed at this time.

[9] It is clear the government is trying to prejudice this Court against Attorney Wanderling by referencing other clients he represented.  These parties have no relevance to the charges Mr. Volpendesto faces and these representations create no conflict.

acts in this capacity as Registered Agents.  Attorney Wanderling submits that in his 20 plus years of his

practice he has been the Registered Agent for probably over 100 corporations.

## ARGUMENT

Under the Sixth Amendment of the United States Constitution, a person accused of a crime has

the right to the effective assistance of counsel.  It is an essential component of the right to counsel that

the accused be given the opportunity to retain counsel of his own choosing.  *E.g., Powell v. Alabama*,

287 U.S. 45, 33 (1932) ("It is hardly necessary to say that, the right to counsel being conceded, a

defendant should be afforded a fair opportunity to secure counsel of his own choice.");  *see also*

*United States v. Wheat*, 486 U.S. 153, 157 (1988); *United States v. Santos*, 201 F.3d 953 (7th Cir.

2000).

Although the right to counsel of choice is not absolute, disqualification of counsel of choice is a

"drastic" measure, and one of "last resort".  *In Re Grand Jury Proceedings*, 859 F.2d 1021, 1025

(1st Cir. 1988); *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986); *see also United States v.*

*DeFazio*, 899 F.2d 626, 629 (7th Cir. 1990) ("Disqualification of chosen counsel can have severe

consequences, especially when the representation has already begun."); *United States v. Renda*, 669

F.Supp. 1544, 1547 (D. Kansas 1987) ("Our judicial system permits a criminal defendant to privately

retain competent counsel if he so desires, and only in the gravest of circumstances should this right be

taken away.").

"In seeking to disqualify a defendant's chosen counsel, the government bears a heavy burden of

establishing that concerns about the integrity of the judicial process justify the disqualification."  *United*

*States v. Micke*, 859 F.2d 473, 479 (7th Cir. 1988) (quoting *United States v. Washington*, 797 F.2d

1461, 1465 (9th Cir. 1986)); *see also Diozzi*, 807 F.2d at 12.  As part of this burden, the government

must overcome "a presumption in favor of counsel of choice."  *Wheat*, 486 U.S. at 160.

Even when an actual conflict of interest arises, the Seventh Circuit has "decline[d] to adopt a *per se* rule of disqualification." *United States v. O'Malley*, 786 F.2d 786, 789 (7th Cir. 1986); *see also United States v. Ramsey*, 785 F.2d 184, 193 (7th Cir. 1986) ("There is no "mandatory disqualification rule; even at a trial, defendants may proceed with a lawyer subject to a conflict of interest."). Rather, the decision of whether or not to disqualify counsel entails exercise of district court discretion through the assessment of "the interests of the defendant, the government, the witness, and the public." *O'Malley*, 786 F.2d at 790; *see also Wheat*, 486 U.S. 153.

Mr. Volpendesto is charged with serious crimes, and "obviously need[s] a good lawyer." His *choice* of counsel to defend against the charges cannot be taken lightly. *Flanagan v. United States*, 465 U.S. 259, 268 (1984) ("Obtaining reversal for violation of such a right [to counsel of choice] does not require a showing of prejudice to the defense, since the right reflect constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding.").

Of course, Mr. Volpendesto has a right to conflict-free counsel. But like most other constitutional rights, that right is subject to waiver. *E.g., United States v. Cirrincione*, 780 F.2d 620, 624 (7th Cir. 1985); *United States v. Bradshaw*, 719 F.2d 907, 911 (7th Cir. 1983). While *Wheat* establishes that a district court is not obligated to accept a defendant's waiver, "only in unique circumstances can a court disqualify counsel over a defendant's objection when the sole basis for that disqualification is a potential for a conflict of interest" of which the defendant is aware. *Cirrincione*, 780 F.2d at 628; *see also Renda*, 669 F.Supp. at 1547.

Here, after being fully advised of the potential conflicts of interest, the government's interest in his coorporation, and being advised to consult with independent counsel[10], Volpendesto has executed a knowing, intelligent and voluntary waiver of his right to conflict-free counsel. He is willing to reaffirm this waiver in open court.

In a series of cases, the Seventh Circuit has upheld defendants' waivers of the right to conflict-free counsel. *See, e.g., United States v. Lowry*, 971 F.2d 55, 59-63 (7th Cir. 1992) (defense counsel was under a government investigation, represented all the defendants in a multiple defendant case, and had represented two of the defendants' employees in obtaining immunity, one of whom testified at trial; on appeal, a defendant challenged his waiver of the conflict caused by the government's investigation of his lawyer; the court of appeals held that the district court did not err in accepting the defendant's waiver of conflict-free counsel); *United States v. Roth*, 860 F.2d 1385,1391 (district court did not err in accepting waiver of right to conflict-free counsel where defense counsel had represented a number of individuals in the Greylord investigation and had agreed to represent the defendant on the condition that he not plead guilty (and possible implicate other clients counsel represented); the court of appeals sustained the waiver of conflict-free counsel even though it turned out that the defendant was not advised that his lawyer was under investigation by the Attorney Registration and Disciplinary Commission, and that his lawyer could not ethically pursue a strategy of blaming one of his other clients); *Cirrincione*, 780 F.2d at 624-28 (district court did not err in accepting waivers of the right to separate counsel from two co-defendants represented by the same attorney; disqualification in the face of a knowing waiver should be ordered "only in unique circumstances"); *Bradshaw*, 719 F.2d at 910-18. The result should be no different here.

---

[10] At the time of this filing, Mr. Volpendesto had not yet met with an independent attorney. If such was not done prior to any hearing, we have no objection to an in court inquiry or the appointment of a panel attorney for such an interview.

While Attorney Wanderling represents he owes no duty and has no conflict as to C/W4, Mr. Polchan and alleged Outfit Member A has been advised by counsel independent of Edmund P. Wanderling, and are willing to execute a waiver in which they indicate they have "no objection to Edmund P. Wanderling representing Mr. Volpendesto." They both indicate that they do not wish to "deprive Mr. Volpendesto of his right to counsel of his choosing." They also do not object "to being cross-examined by another attorney" if called as a witness at Mr. Volpendesto's trial. Further, Mr. Volpendesto has been advised of the allegations of the government, the potential conflict and the government's desire to speak to him and is willing to waive any potential conflict. (see attached affidavit)

The waivers plainly tip the scales against disqualification. Nonetheless, we recognize that a district court is not obligated to accept waivers. At the same time, "district courts have . . . broad discretion to fashion remedies to avoid conflicts of interest." _United States v. Messino_, 181 F.3d 826, 830 (7th Cir. 1999); _see also United States v. Britton_, 289 F.3d 976, 982 (7th Cir. 2002). A key consideration is whether privileged communications of the former client will remain confidential even though the former client is a witness. As stated in _O'Malley_:

> As to the ethical concerns in cases where the defendant's counsel has previously represented a government witness, te witness's attorney-client privilege may be protected by limiting the examination of the witness . . . Moreover, by limiting examination of a witness who asserts an attorney-client privilege in such a way that his confidences are fully protected, the court may avoid any appearance of impropriety. Similarly, ensuring that the defendant knowingly and intelligently waives his right to conflict-free counsel will avoid an appearance of impropriety . . . These matters are within the discretion of the district court.

786 F.2d at 790 (citation omitted); _see also United States v. Cunningham_, 672 F.2d 1064, 1068-73 (2nd Cir. 1982) (government witness formerly represented by defense counsel did not object to defense counsel representing the defendant, but did not waive the attorney-client privilege; the court of appeals ruled that the district court erred in disqualifying defense counsel since counsel had agreed to cross-

examine his former client only with information in the public record).

Although not discussed by the government in its disqualification motion, cross-examination by backup counsel who is not a party to the former client's confidences is a well-recognized remedy. _Britton_, 289 F.3d at 983.  ("We also see no problem with the district court's screening off of DeRango as we have previously approved the use of such measures in order to avoid potential ethical violations."); _United States v. Agosto_, 675 F.2d 965, 974 (8th Cir. 1982) (district court should consider defense counsel's offer to employ backup counsel to cross-examine witnesses represented by counsel, and obtain a waiver of the right to effective assistance of counsel from the defendant); _United States v. Rahman_, 837 F.Supp. 64, 71 (S.D.N.Y. 1993) ("The government has suggested further that standby counsel be appointed to conduct cross-examination of any former client of the Kunstler firm who takes the stand at trial, so as to minimize the risk that the client's privileged communications to the Kunstler firm will influence the cross-examination.  That will be done."); _United States v. Dalke_, 2003 WL 1741572, (N.D. Ill. 2003) (denying government's motion to disqualify counsel, stating, "As the Seventh Circuit has expressly sanctioned this court's decision to remedy a similar conflict of interest in just this manner - having another attorney in the same firm who is screened off from any confidential information conduct the cross-examination of the witness at issue - the court prefers to follow the same course here.") Utilization of backup counsel avoids the possibility of counsel cross-examining a client and using confidential information.  _See United States v. Micke_, 859 F.2d 473, 481(7th Cir. 1988) (district court did not order disqualification of co-counsel who had filed an appearance just before jury selection and represented that he would not examine any witnesses notwithstanding the fact that co-counsel was a possible government rebuttal witness and had represented two government witnesses on unrelated civil matters; the court of appeals upheld the procedure of not permitting co-counsel to examine the defendant, but allowing co-counsel to remain at counsel table and assist in the defense at

trial).

Here, Mr. Volpendesto will engage if necessary, backup counsel who will cross-examine any other witnesses in which there may be a conflict. In view of the waivers and unconflicted backup counsel, "the integrity of the system will be adequately preserved." *Cunningham*, 672 F.3d at 1073; *see also O'Malley*, 786 F.2d at 790; *Agosto*, 675 F.2d at 975. On this record, the government has not overcome the presumption in favor of counsel of choice.

The government may assert that Volpendesto's attorney should be disqualified to prevent a conflict issue from arising on appeal in the event of a conviction. The government's analysis is incorrect. In actuality, disqualification of Volpendesto would likely give rise to an appellate issue. On the other hand, denial of the government's disqualification motion would dispose of appellate issues since Volpendesto, in his affidavits, knowingly and voluntarily waived the right to seek appellate or collateral relief based on an effective assistance of counsel/conflict of interest issue. Further, the gist of the government's argument, Attorney Wanderling's representation of C/W4 never happened in the true sense of an attorney-client relationship.

While the government's motion alleges conflicts and professional responsibility issues, is their motion truly motivated by legal ethics and to protect Mr. Volpendesto. The government should be as concerned with Mr. Volpendesto's health as they are for him having conflict-free counsel.

WHEREFORE, based on the foregoing, Defendant, Samuel Volpendesto, respectfully moves this Honorable Court to deny the government's motion to disqualify his attorney and grant any other equitable and appropriate relief.

Respectfully submitted,

s/ Edmund P. Wanderling
Edmund P. Wanderling, Attorney for
Defendant, Samuel Volpendesto

Edmund P. Wanderling
Attorney at Law
2505 S. Des Plaines Avenue
North Riverside, IL 60546
(708) 443-5400